## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| KIMII PORTER and<br>CASSANDRA JACKSON,<br><br>  Plaintiffs,<br><br>v.<br><br>HENNEPIN COUNTY,<br>  Defendant. | Civil No. 06-3142 (JRT/FLN)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Kenya C. Bodden, William L. Walker, Jr., Karlowba R. Powell, and Theodore W. Stephany, **WALKER LAW OFFICES, PA**, 3112 Hennepin Avenue South, Minneapolis, MN  55508, for plaintiffs.

Robert Zeglovitch, **LAW OFFICES OF ROBERT ZEGLOVITCH**, One Financial Plaza, Suite 2400, Minneapolis, MN  55402, for defendant.

Plaintiffs Kimii Porter and Cassandra Jackson are African-American probation officers with the Hennepin County Department of Corrections.  Plaintiffs commenced this action against Hennepin County alleging violations of their civil rights under 42 U.S.C. §§ 1981 and 1983, and violations of the Minnesota Human Rights Act and the Minnesota Constitution.[1]  This case is now before the Court on defendant's motion for summary judgment.  For the reasons discussed below, the Court grants defendant's motion and dismisses the remaining counts of plaintiffs' complaint.

---

[1] Plaintiffs initially asserted common law claims of negligent supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation.  This Court granted defendant's motion to dismiss with respect to each of these claims in a Memorandum Opinion and Order dated December 29, 2006.

# BACKGROUND

Plaintiffs Kimii Porter and Cassandra Jackson are employed as probation officers with the Hennepin County Department of Community Corrections ["DOCC"].  Jackson began working in DOCC in September 2001 as part of DOCC's "inter/intrastate" unit. Porter has worked in DOCC since the summer of 1989.  Porter worked in DOCC's "felony probation" unit.  Both Jackson and Porter are African-American.

On October 28, 2004, Jackson received through interoffice mail an anonymous, type-written letter dated October 12, 2004.  The letter read as follows:

> Cassandra Jackson,
>
> It should be a disgrace for you to want to show your face after having an affair with one of your clients.  It is tiring knowing that you black staff here in the county take advantage of your positions.  Most of you don't deserve to even be here.  One of you are a known convicted felon with a White wife which doesn't make him White, one of you were convicted of disorderly conduct, one of you falsified documents several years back., one of you are known to sleep with defense attorney's and another one of you come to work and do nothing conducive to the work requirements.
>
> If it wasn't for Affirmative Action, none of you would be here in the first place.  Why don't you do us all a favor and get your black asses out of here.

Within a day of receiving the letter, Jackson distributed copies of the letter to her supervisor, Carol Engel, Engel's manager Craig Vos, and to five African-American DOCC employees.   When Jackson gave Engel a copy of the letter, Engel told Jackson, "Don't take it personal."

Porter testified in deposition that Jackson and Porter initially decided not to take the letter to DOCC management.  Within one to two weeks, however, following discussions with other African-American staff members, Jackson and Porter changed

their minds and decided to bring the letter to the attention of DOCC management.  Prior to November 5, 2004, DOCC manager Dennis Avery initiated a meeting with all African-American DOCC staff members to discuss the letter.  During this meeting, Jackson told Avery that she did not want him to communicate the contents of the letter to a broader population within DOCC.

Following the meeting, Avery sent an email to all staff entitled "Respect in the Workplace."  The email did not mention the anonymous letter.  On December 6, 2004, Avery sent another email to DOCC staff stating, "This agency and all the people who work here need to know that I have no tolerance for hateful or racially motivated behavior of any kind."  (Zeglovitch Aff. Ex. G.)  DOCC also conducted an investigation to try to locate the author or source of the anonymous letter.  A Hennepin County information technology specialist searched for the document on six servers that included all computer users at DOCC at the time the letter was sent.  The search was not successful, however, and neither the author nor the source of the letter was ever identified.

On December 21, 2004, Avery held a division-wide meeting on racism and respect in the workplace.  Participation in the meeting was voluntary.  DOCC also formed a Diversity Committee, the purpose of which was to plan and execute a series of "dialogue sessions" on the topic of tolerance, diversity, and respect in the workplace.  The Committee reiterated the existing Hennepin County non-discrimination policy.

Participation in the dialogue sessions was also voluntary.  Participants were asked to anonymously complete a "Questionnaire on Respectful Work Environments"

following the dialogue sessions. The comments were compiled and distributed to certain managers in DOCC, including members of the Diversity Committee, but not to DOCC staff at large. In a March 2006 questionnaire, a participant wrote "Telling supervisor who they will hire to fulfil [sic] ethnic quota, rather than true equal opportunity. . . . having to hire black female whom just last year was convicted of assault. Ugh!" (Zeglovitch Aff. Ex. Z.)

In addition to the factual allegations surrounding the anonymous letter, Jackson points to a variety of incidents at DOCC that she contends constitute racial discrimination or harassment. For example, Jackson alleges that a fellow probation officer called and asked her to take a particular project, telling Jackson "people like you should be happy doing this." (Zeglovitch Aff. Ex. A, at 46-47.) Jackson also alleges she called a fellow probation officer to let her know that the probation officer had completed the wrong documents in a case. The officer replied that "you people need to do what it is that you're told." (Zeglovitch Aff. Ex. A, at 55.) Jackson asked what the officer meant by "you people" and the officer hung up. Jackson alleges that her supervisor, Carol Engel, generally treated her differently from her white co-workers. For example, Engel allowed Jackson's white colleagues to supervise interns and volunteers, but provided no such opportunities to Jackson. In addition, Engel reviewed and modified Jackson's probation recommendations on several occasions, while Jackson's white co-workers did not submit their probation reports to Engel.

Porter also alleges various additional incidents of racial discrimination or harassment at DOCC. Porter alleges that she was told to be at her desk from 9 to 5,

while white co-workers with the same job descriptions were allowed to do field work. During a meeting with her supervisor, Creighton Orth, in or around January 2006, Porter mentioned the anonymous letter, and Orth responded that he had heard all he wanted to hear about the letter and would not discuss it further.  When Porter approached Orth's manager, Craig Vos, about Orth's comments, Vos responded, "Well, hell what do you want me to do, Kimii?  I'm not the one who – it's not my people who steals." (Zeglovitch Aff. Ex. C, at 127.)  Porter also alleges that, on one occasion in 2006, Orth took an Arrest and Detention order that Porter had drafted, threw it in the garbage, and told her to re-write it.

In addition, Porter alleges that in September 2006 Orth told her he had received a report that an African American male had been identified as driving Porter's car at the Hennepin County Government Center, and that a security officer had "exchanged words" with the driver of the car.  Porter stated that, in fact, Orth did not have any such report, that the driver of the car was her husband, and that Orth's conduct was intended to harass her.  Porter also alleges that, in early 2004, a probation officer told Porter that a fellow probation officer had stated that Porter drove a nice car, and the officer wondered how Porter could afford it.  Porter also testified that, several years ago, a white probation officer who sat across the hall from Porter would refer to African Americans as "lazy bastards."  Porter alleges that she reported this behavior to Vos in 2000, and Vos responded, "That's Kevin." Porter was unaware of any action taken by DOCC management in response to her complaint, though the probation officer was later transferred to another unit.

Porter and Jackson filed a complaint against Hennepin County on July 28, 2006.[2] They allege that Hennepin County violated their civil rights under 42 U.S.C. §§ 1981 and 1983 by fostering a custom of apathy toward racial harassment and discrimination in the workplace. Porter and Jackson further allege that Hennepin County's actions violate the Minnesota Human Rights Act ("MHRA") and the Minnesota Constitution. Hennepin County then filed this motion for summary judgment on each of plaintiffs' claims.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] Plaintiffs initially named the Hennepin County Department of Community Corrections as a separate defendant in this action. In the Court's Memorandum Opinion and Order dated December 29, 2006, the Court dismissed the DOCC from this action on grounds that the DOCC is not a separate and distinct legal entity from Hennepin County.

## II.     PLAINTIFFS' CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. §§ 1981 AND 1983 (Counts 1 and 2)

Porter and Jackson assert claims of racial discrimination and racial harassment against Hennepin County under 42 U.S.C. §§ 1981 and 1983. They argues that Hennepin County should be liable for the alleged racial discrimination and harassment because it is responsible for a "custom of apathy" toward racially charged conduct in the workplace. The County argues that Porter and Jackson have failed to establish that the alleged constitutional deprivations were the result of an official Hennepin County policy or custom, and that plaintiffs' civil rights claims must therefore be dismissed.[3]

A municipality or local governmental unit may be held liable under § 1983 for the unconstitutional acts of its officials or employees only when those acts are taken pursuant to an unconstitutional policy or custom. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *see also Powell v. City of Pittsfield*, 143 F. Supp. 2d 94, 113 (D. Mass. 2001) (stating that plaintiff's § 1981 claim must show that the injury resulted from an official

---

[3] The County also argues that plaintiffs' § 1981 claim fails because § 1983 provides the exclusive federal remedy for a state actor's alleged violations of § 1981. *See Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 733-35 (1989) (holding that a cause of action under § 1983 "constitutes the exclusive federal remedy for violations of the rights guaranteed in § 1981 by state governmental units"). Following the *Jett* decision, Congress enacted the Civil Rights Act of 1991, adding subsection (c) to § 1981, which provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Several courts of appeals have since taken diverging views regarding whether § 1981(c) creates a separate and independent federal remedy apart from § 1983. *Compare Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1205 (9th Cir. 1996) (holding that § 1981(c) statutorily overrides *Jett*'s holding), *with, e.g.*, *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) (finding nothing in the text or legislative history that evinces an intent to override *Jett*). It appears that the Eighth Circuit has not squarely addressed this issue. However, the Court need not resolve the issue here because Porter and Jackson have failed to establish a municipal custom or policy that resulted in a constitutional violation.

policy or custom).  A plaintiff must demonstrate that the governmental entity had an official policy or custom that violated the law and caused the constitutional injury. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  "For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the moving force behind the constitutional violation." *Mettler*, 165 F.3d at 1204.

Porter and Jackson concede there is no evidence that the alleged discriminatory conduct was taken pursuant to a Hennepin County policy.  Indeed, the record demonstrates that Hennepin County maintains a "Diversity, Non-Discrimination and Respectful Workplace Policy," (Zeglovitch Aff., Ex. Z.), and plaintiffs have not alleged any discriminatory conduct on the part of high-level Hennepin County officials in policy-making positions.  *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 652 (8th Cir. 1998) (stating that municipal liability may arise "from a single act of a policy maker . . . in an authoritative policy making position" that represents the official policy of the municipality).

Porter and Jackson argue instead that Hennepin County fostered a widespread "custom of apathy" toward racial discrimination and harassment in the workplace, and that Hennepin County should therefore be liable for the conduct of DOCC employees. Under a "custom of inaction" theory, liability may be established "through proof that the alleged conduct was so pervasive among nonpolicymaking employees of the municipality as to constitute a custom or usage with the force of law." *Springdale Educ. Ass'n*, 133 F.3d at 652; *see also Arendale v. City of Memphis*, 2008 WL 731226, at *10 (6th Cir. Mar. 20, 2008).  To establish a *Monell* claim based on a "widespread custom," a plaintiff

must allege facts that tend to show (1) a "widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that . . . the custom was the moving force behind the constitutional violation." *Springdale Educ. Ass'n*, 133 F.3d at 653.

Plaintiffs' allegations of unconstitutional conduct by DOCC employees are not a model of clarity. However, Porter and Jackson appear to rely principally on the anonymous letter as evidence of unconstitutional conduct by DOCC employees.[4] Even viewing the facts in a light most favorable to plaintiffs, the Court is not persuaded that the anonymous letter demonstrates a widespread and persistent pattern of unconstitutional conduct. While the letter was extremely reprehensible, the record shows that the receipt of the letter was a one-time event, not a widespread pattern of unconstitutional conduct by fellow employees.[5] *See McGautha v. Jackson* County, 36 F.3d 53, 57 (8th Cir. 1994) ("Liability for an unconstitutional custom or usage . . . cannot arise from a single act."); *Dick v. Watonway County*, 738 F.2d 939, 942 (8th Cir. 1984) (same).

---

[4] To the extent plaintiffs rely on the additional incidents detailed in the background above, plaintiffs do not allege facts showing that policymaking officials had any notice of these incidents. Thus, even assuming that these additional incidents were sufficient to demonstrate a widespread and consistent pattern of unconstitutional conduct, summary judgment in favor of defendant is appropriate with respect to these incidents. *See Springdale Educ. Ass'n*, 133 F.3d at 653.

[5] While plaintiffs alleged the existence of at least one other anonymous letter, plaintiffs' counsel conceded at oral argument that there was no evidence in the record that demonstrated the existence or content of such a letter.

Even if the receipt of a single, anonymous letter was sufficient to show a widespread pattern of unconstitutional conduct, however, the allegations fail to show deliberate indifference to, or tacit authorization of, the alleged conduct by Hennepin County.  Porter and Jackson point specifically to the following allegations as demonstrating a custom of racial apathy:  Engel's comment that Jackson should not take the anonymous letter personally; Orth's comment to Porter that he did not want to hear any more about the anonymous letter; that DOCC was unable to identify the author of the anonymous letter; Avery's comments that he did not make further inquires after the letter investigation was handed over to his superior; and Vos's remark to Porter in January 2006 that "it's not my people who steals."

The Court is not persuaded that these incidents are sufficient to demonstrate deliberate indifference or tacit authorization with respect to the letter.  Indeed, the record suggests that DOCC took significant measures to identify the author of the letter and to reinforce the County's existing policies with respect to diversity and respect in the workplace.  DOCC initiated an investigation with respect to the letter, including a search of all computer servers used by DOCC employees.  The mere fact that the search did not reveal the identity of the anonymous author is insufficient to establish deliberate indifference or tacit authorization.  *See Sims v. Mulcahy*, 902 F.2d 524, 544 (7th Cir. 1990) (finding a city investigation of alleged misconduct did not constitute deliberate indifference or tacit authorization even if the investigation could have been more thorough).  Further, the record shows that DOCC management initiated meetings with African-American staff members to discuss the letter, sent emails to staff members

regarding discrimination policies and respect in the workplace, held meetings with DOCC staff regarding racism in the workplace, and convened a "Diversity Committee" to discuss issues of tolerance, diversity, and respect in the workplace. Avery's comment that he did not make further inquiries into the investigation is not surprising, as he had handed the investigation over to a superior and was no longer involved in the investigation. In light of DOCC's actions, the Court further determines that Vos's rather opaque remark to Porter, even viewed in a light favorable to plaintiffs, is not sufficient to allow a reasonable jury to conclude that there was deliberate indifference to or tacit authorization of conduct surrounding the anonymous letter.

Finally, the Court finds that Porter and Jackson have not shown that the alleged deliberate indifference was the moving force behind any constitutional deprivations. In particular, the Court notes that nearly all the actions by DOCC management – actions that plaintiffs allege constitute a custom of apathy toward racial animus – occurred *after* receipt of the anonymous letter. It is undisputed that, following receipt of the anonymous letter in October 2004, no additional letters were received. Indeed, the record suggests that the causal effect of DOCC's actions following the receipt of the anonymous letter was to effectively put a stop to similar instances of unconstitutional conduct.

In sum, the Court finds that plaintiffs' allegations fail to create a genuine issue of material fact as to an unconstitutional custom of apathy toward racial harassment and discrimination at Hennepin County. The Court therefore grants the County's motion for summary judgment on Counts 1 and 2 of plaintiffs' complaint.

### III. CLAIMS UNDER THE MINNESOTA HUMAN RIGHTS ACT AND THE MINNESOTA CONSTITUTION (Counts 4 and 5)

Porter and Jackson also claim that the County's conduct constitutes unlawful discrimination in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01 *et seq.*, and violates plaintiffs' rights under Article I, § 10 of the Minnesota Constitution. The County argues that plaintiffs' MHRA claim is time-barred, and that Minnesota law does not allow a private remedy for alleged violations of the Minnesota Constitution. The Court agrees.

Minnesota law provides that a person may bring a civil action under the MHRA "within 45 days after receipt of notice that the commissioner has dismissed a charge." Minn. Stat. § 363A.33, subd. 1. Receipt of notice is presumed to be five days from the date of service by mail. *Id.* Here, it is undisputed that the Minnesota Department of Human Rights ("MDHR") dismissed the discrimination charges by letter dated June 2, 2006. Porter and Jackson commenced this action on July 28, 2006. Thus, the Complaint was filed 51 days after presumed receipt of the MDHR notice, and six days after the statutory filing deadline. Accordingly, the Court agrees with the County that plaintiffs' MHRA claim is time barred under Minnesota law, and grants defendant's motion for summary judgment on plaintiffs' MHRA claim (Count 4).

The Court further finds that the claim under Article I, section 10 of the Minnesota Constitution fails.[6] Unlike 42 U.S.C. § 1983, Minnesota has no statutory scheme that

---

[6] The Court notes that Article I, section 10 relates to the prohibition on unreasonable searches and seizures. Minn. Const. Art. I, § 10. Although the alleged violation of this constitutional provision is wholly unrelated to the facts of this case, and appears to be the result

(Footnote continued on next page.)

creates a private right of action for violations of the Minnesota Constitution. *Fearing v. St. Paul Police Dept.*, 2005 WL 914733, at *5 (D. Minn. Apr. 20, 2005). Thus, "courts have repeatedly stated that Minnesota has not recognized private remedies for violations of the Minnesota Constitution." *Id.* For this reason, the Court grants defendant's motion for summary judgment on plaintiffs' state constitutional claim (Count 5).

**ORDER**

Based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that

1.  Defendant's First Motion for Summary Judgment [Docket No. 27] is **GRANTED**.

2.  Count 1 (Violation of 42 U.S.C. § 1981), Count 2 (Violation of 42 U.S.C. § 1983), Count 4 (Violation of the MHRA), and Count 5 (Violation of the Minnesota Constitution) of plaintiffs' Complaint are **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 23, 2008                   s/ John R. Tunheim
at Minneapolis, Minnesota.           JOHN R. TUNHEIM
                                                        United States District Judge

---

(Footnote continued.)

of a drafting error on the part of plaintiffs' counsel, plaintiffs never sought to amend the complaint to assert an appropriate legal basis for the alleged violation. On this basis alone, the Court finds plaintiffs' constitutional claim should be dismissed.